The case is Rankin-Lyla v. Rapid America, Phillips v. Rapid America, Barutha v. BAE East, Inc., Van Slyke v. Indiana Harbor Belt Railroad, and these cases have all been consolidated for oral argument. We have Mr. Schultz. We'll be arguing for all appellants, and we will not... Mr. Kiyanka will be arguing for the appellee. Are you sharing argument, or is it just you and Mr. Kiyanka? Okay. When you're prepared, and I see you have some exhibits, take a few minutes to get situated, and then we'll proceed when you're prepared to. No, not at all. You can't all pull up, though. I guess that was kind of unfair. Hopefully nobody else wants to. Just let the record show we have about 20 attorneys in the room that are all connected to this case. Are you prepared to begin, Mr. Schultz? I am, Your Honor. Good morning. May it please the Court? Good morning. May it please the Court? My name is Robert Schultz, and I'm arguing this morning on behalf of the approximate two dozen defendants who have joined the appeals of Judge Young's ruling in the Baruta, Phillips, Rankin, and Van Slyke cases. At the outset, I think it's worth noting that although these are four separate lawsuits, they in fact involve multiple private liability claims. Each case is brought against numerous defendants. Each claim against each defendant, in fact, is its own private liability suit. And, for example, of 24 defendants that are appealing the Baruta case, there are 24 separate private liability claims, at a minimum, that are being prosecuted in that one lawsuit. And that same fact applies to each of the lawsuits of Phillips, Rankin, and Van Slyke as well. Your Honor, we believe that Judge Young abused his discretion in denying the 409 convenience motion in these cases for at least four fundamental reasons. First, because Baruta, Phillips, and Rankin have no practical connections to the state of Illinois. The factors and considerations were recognized in the Vinson v. Allstate decision of the Illinois Supreme Court, as well as this Court's most recent decision in Labrador. Van Slyke, additionally, has no connections to St. Clair County, a fact that was recognized by the Illinois Supreme Court in Dodd. Second, Judge Young failed to give due consideration to Baruta, Phillips, and Rankin. The fact that none of the exposure and attorney's witnesses, medical witnesses, and family members are subject to Illinois subpoenas. A significant private factor consideration that makes the litigation more expensive and burdensome than it would have been brought in a reform court, at least some of those witnesses' results. And recognizing, of course, that we're talking about the need to investigate and discover issues that relate, in some instances, to 30, 40, or 50 years ago. Third, Judge Young abused his discretion because he completely ignored the fact that the 409 will need to be applied. This is a fact that's not seriously disputed by the plaintiffs. And, in fact, it is a fact that it's been recognized repeatedly by the Illinois Supreme Court in the Setkawiak decision, as well as the Gridley decision, as well as by this Court in the more recent Home Depot decision. Stated another way, and this is what was concluded in the Gridley decision, The Wallace-Hales precedent in Illinois is that Illinois has a public interest in not being burdened by applying foreign law in the absence of strong public policy reasons and strong Illinois connections. Those factors are not present in these four cases. And fourth, by failing to acknowledge that the public interest requires that causes that are without significant factual connections to the particular forms be litigated in convenient forms, and ensure that jurisdictions are not unfairly burdened with litigation that has no interest or connection. In short, Judge Young disregarded the clear and unambiguous precedent of laboraty with respect to the interstate 409 convenience motions, and he did it shortly after the laboraty decision was handed down by this Court. He disregarded the clear guidance that Dodd, Green, Lang, and Morris with respect to the interstate 409 convenience, the alternative release sought in advanced light, because in each of those cases, Dodd, Green, and Lang, and Morris, there was at least some connection to the county. In advanced light, there is no practical connection to St. Clair County. Factually, the three cases, and your honors can see that I'm dividing them up somewhat, Berutha, Phillips, and Rankin, the interstate 409 convenience arguments, each place, with respect to those three cases, each plaintiff is a non-resident of the state of Illinois, each of the plaintiff's decedents never lived, worked, or was exposed to asbestos in the state of Illinois, nor received medical care. There are no workplace witnesses, next of kin, or medical witnesses that are located in Illinois, and in fact, the plaintiff did not identify a single Illinois witness who he or she intended to call a trial. The same could be said of the advanced light case in terms of no connections to St. Clair County, and the locations of other witnesses in Berutha are either in Lake County, Indiana, or Crook County, Illinois. The facts are not in dispute. The defense drew these facts, your honors, from the plaintiff's pleadings, from their answers to discovery, and from their own witnesses. I would note that upon reviewing the court's record, you will see that the plaintiff's complaints in each of these four cases are not sketchy or vague. They, in fact, have a great deal of detail in the form of exhibits that are attached that demonstrate the location of the worksites, employers, and the witnesses. Your honors, we acknowledge what this court has said in Laverty, what the Supreme Court has said in Langenhorst, Gridley, and other decisions concerning form non-convenience, and that is that it is our burden to establish to the court that the public interest and the private interest factors strongly favor the transfer to our desired form. In another way, the plaintiff's choice of form is inconvenient to defendants, and another form is convenient to other parties. But the role of inconvenience, your honor, I think needs to be stated in this case. It is legal inconvenience. Convenience in the legal sense is established by the doctrines of form non-convenience. That is, the weighing of the public interest and the private interest factors. This is not the Webster's Dictionary definition of the word convenience. And we met those burdens. In Beruza, your honor, we identified Wisconsin, possibly Florida, as the alternative forum. Wisconsin is a place where the deceived work as an electrician, where he performed home remodeling projects in Manitowoc and Milwaukee. And no Illinois connections were identified by the plaintiff to support the claim. Florida is where he lived, where he was diagnosed, and where most of the medical care is provided. In Phillips, we identified both New York and Pennsylvania as the more convenient forums, because those are the states where Mrs. Phillips worked as a home remodeler, and where the majority of her husband's work was performed, which secondarily exposed her to asbestos. It is also where her next of kin lived. No co-workers or exposure witnesses whatsoever were identified by the plaintiff. In the Rankin case, your honors, Missouri is identified as the more convenient forum, again based upon the vast majority of alleged exposure occurring in Missouri as a farmer and as a home and church remodeler. Family members live in Missouri, and the only co-worker identified by the plaintiff's attorneys lives in Kansas. Finally, in Van Slyke, we identified Indiana under an interstate forum nonconvenience doctrine, where alternatively Chicago on an intrastate forum nonconvenience doctrine is the alternative forums, based upon Mr. Van Slyke's 35 years of work with the railroad. In fact, the railroad's offices were in Lake County, Indiana. Mr. Van Slyke's home was in Lake County, Indiana. His home remodeling work was in Lake County, Indiana. The 56 miles of main track for the railroad for which he worked ran from Lake County, Indiana, around the end of the Lake Michigan up to Franklin Park in Foote County, Illinois. Your honors, the plaintiff's response to these undisputed facts about the absence of exposures occurring in Illinois and the absence of back witnesses or co-workers that live in Illinois is to use armed witness disclosures to show that defendants' witnesses are scattered across the country, the so-called scattered witness site. And I anticipate that we'll see the same map today regarding witness locations that we saw in their briefs. But there's a fundamental fallacy in that approach, and that is that the overwhelming majority of those witnesses, for example, over 90% plus in the case of Garuth at Phillips, are witnesses on defendant's disclosures that are either expert witnesses or corporate witnesses, factors which the courts have recognized. What the courts have said is that the expert witnesses in a foreign nonconvenience location should be given little weight because experts will go where they're told to go. And that in the reverse, for plaintiffs, with regard to corporate witnesses, they do not face the same task of the difficulties in securing the witnesses' location in corporations that the defendants, on the other hand, have in trying to compel the appearance of witnesses that are located out of state. For example, your honors, in a case in Illinois where there is no meaningful connection, for us to investigate or identify witnesses or depose witnesses in Pennsylvania or New York, for example, we do not have the power or the subpoena power to compel the appearance of those witnesses. On the other hand, the plaintiffs can compel the appearance of the defendant's witnesses if the case remains in Illinois through Supreme Court Rule 237 or under the law of another jurisdiction as recognized by both the Rivlin case as well as by the United States Supreme Court decision in Piper which states that the plaintiffs do not face the same difficulties in securing the attendance of witnesses of corporate witnesses. But maps, your honors, do not alter the fact, as this court said in Laverty, that the state of Illinois has no connection to the litigation of Berutha Phillips-Rivlin. Under the Fax Warrant Dismissal in Laverty and refiling in Michigan, or in this case, your honors, Wisconsin, New York, Pennsylvania, Missouri, or in the case of Van Slyke, Indiana, or alternatively, refiling in Chicago. Similarly, the fact that a few ex-pro witnesses are located in St. Clare County, again, is addressed by the Rivlin decision adopting the rule of the recognition of Piper, that the location of ex-pro witnesses is not a significant fact when determining whether it's a convenient forum. Your honors, the fact that there may be witnesses in more than one location does not mean that the plaintiffs may be able to file suit or prosecute their lawsuit in any form. Even the case decided by the plaintiffs for the scattered witness site, Irwin, for example, or Langenhorst, in each of those cases, there were non-ex-pro witnesses who were identified and located within the forum. That is not what we have in this case. Your honors, turning to public interest factors, they overwhelmingly favor dismissal. In fact, your honors, the plaintiffs had no meaningful response to the public interest analysis. At one point, they suggested this court might balance the increased cost of litigating in St. Clare County against the potential economic benefits that accrue to the county. Your honor, the proposition of economic benefits was rejected, and wiser to preserve the city's growth. Moreover, your honors, it is repugnant to the underlying principles of Form 9 convenience, which are based upon principles of fundamental fairness and a sensible and effective administration of justice. Simply put, the role of the courts is to administer justice, not to make money out of the county. The related public interest argument from the plaintiffs is, quote, that these cases are going to be filed somewhere, so it might as well be filed in St. Clare County. Presumably, the plaintiffs are trying to build off the comment of this court in Laverty and other comments made by other courts. Product liability cases, including asbestos product liability cases, are not localized consequences. But that does not mean that these cases are free from local considerations or local sources of proof. Indeed, the entire public interest analysis is built off of local connections. And your honors need to look no further than a couple of Supreme Court decisions of Thacker v. Yanarko or Nolan v. Wild & Plain to get some flavor for the local, factual, intensive nature of the proof that's required in these cases. Indeed, your honor, in most jurisdictions, there is a requirement of proving regularity, frequency, and the proximity of each plaintiff's exposure. Again, recognizing, as I said at the outset, that these lawsuits are not simply four lawsuits, but each lawsuit involves multiple product liability claims within a single lawsuit. Generally, more importantly, your honor, the argument or the attitude that these cases are going to be filed somewhere, so why not here, has no support at all. It trivializes the hard work that this court undertakes, and with due respect, it also disregards the ability of our sister state courts and their ability to adjudicate local controversies. Plain and simple, your honors, this is four lawsuits. I know that the plaintiffs do not like that term. I use it reluctantly, but you're left with no other conclusion other than to call this forum short, when there are no meaningful connections with Beruther, Rankin, and Phillips to the state of Illinois, and in Van Slyke, there are no connections at all to St. Clair County, and the connections, in fact, include the interstate factors also favor Indiana. I'm happy to address the court's questions. If not, I'll sit down and reserve my time. Thank you, your honor. You can reserve your time, Mr. Schultz. Thank you for your argument. Mr. Kiyanka. Yes, thank you, your honor. Good morning, your honors. May it please the court, I am Edward Kiyanka, and I represent the plaintiff. I would like to introduce Kevin Connelly, who is a co-counsel in this case, and also in these cases, and also a co-counsel in other cases. Defendants, of course, attempt to minimize the burden of proof in standard review, but these are fundamental to this court's purview of a forum of nonconvenience motion. The standard is abuse of discretion. As this court said in the Heffner case 16 years ago, quote, The question on review is not whether the appellate court agrees with the circuit court's denial of a forum of nonconvenience motion, but whether the circuit court acted arbitrarily without employing conscientious judgment, or whether, in view of all circumstances, the court exceeded the bounds of reason and ignored recognized principles of law, resulting in substantial prejudice. And only five years ago, the Ombudsman Supreme Court in Langenhorst echoed this idea when it said it's only an abuse of discretion if, quote, No reasonable person would take the view adopted by the circuit court. No reasonable person. We have, in this case, a 24-page order that is manifestly not beyond all bounds of reason, as we will show. Langenhorst also reiterated the familiar rule that the burden is on the defendants to show that the private and public interest factors strongly favor litigation in some other forum. Defendant must show a clear right to the relief requested, and any doubts arising from the inadequacy of the record will be resolved against the defendant. Reversal is inappropriate when based on speculation and conjecture. It's their burden. Now, defendants, as they have done repeatedly in these cases, try to divert this court's attention from convenience to contacts and connections, or the search for the, quote, appropriate forum, which they define as where the plaintiff lived or worked, or where the cause of action arose, or where the exposure occurred. This is not the modern approach to forum and on convenience. The Illinois Supreme Court has told us the correct approach, and you will see that we have built our arguments on recent Illinois Supreme Court cases, primarily Langenhorst and Green, and cases cited by the Supreme Court in those cases, and cases relying on those cases. The Supreme Court has clearly said that the court must look beyond the criterion of venue when it considers the relative convenience of a forum. In Langenhorst, the Illinois Supreme Court majority said that the dissent would focus on the more appropriate forum, which is the argument of the defendants in these cases, based on where the cause of action arose. Unfortunately, some other decisions in some forum on convenience cases have also lost sight of the underlying rationale of the doctrine and are substituting the court's view of appropriateness for the true rationale, which is convenience. Convenience is part of the doctrine's name. As the appellate court pointed out in the Hinshaw case, the more appropriate forum is not the correct standard. In 2007, this court in Bedard said, the hallmark of the doctrine of forum on convenience is convenience. Any other approach would be, we suggest respectfully, a judicial infringement on the venue statute. The Illinois Supreme Court in Langenhorst says that the shift to appropriateness for hope would result in the obliteration of the venue statute. In our view, it would be a judicially created common law amendment to the venue statute if we're going to ask the court to determine what is the most appropriate forum when the legislature has already determined by the venue statute that the suit has been filed in a forum that is deemed appropriate because of contacts and connections. That's appropriate to venue. And it would duplicate that to use that same standard for purposes of determining the forum on convenience issue. As this court said in Grant v. Rosen, our legislature gives each plaintiff a statutory right to choose the venue for the vindication of his rights, and the plaintiff's interest in making that choice is substantial. And as, by the way, as the defendants point out, that choice is entitled to less deference if the plaintiff is a nonresident of the forum. But the Illinois Supreme Court in the recent cases has said it's not entitled to no deference. It's still entitled to deference. The courts say that except in the most extraordinary and compelling circumstances, the court should not take away the statutory right to bring suit where venue, the law of venue, permits. Otherwise, it would be substituting its judgment of the more appropriate forum for that of the legislature. If the defendants feel that there is not a contact or connection with the forum in these cases, that argument should be addressed to the legislature. In 2007, this court in Brown v. Cottrell said the, quote, more appropriate forum approach would also obliterate the utility of the forum on convenience doctrine as an equitable doctrine that promotes convenience and the efficient administration of justice. This court refused to assume that defendants' proposed alternative forums were, quote, more appropriate, quote, because one was the place where the accident occurred and the other was where the plaintiffs resided. But that's exactly the defendants' argument in this case. It's not about appropriateness, which is a subjective standard that would give the court leeway. It's about relative convenience. The defendants' burden is to show that there is some other specific forum that is more convenient than the forum the plaintiff chose. They cannot do so, and they have not done so in these cases. In Langhorst v. Green, the Illinois Supreme Court says the focus is on the private and public interest factors, not on some general standard of appropriateness. We have to look at these factors, and we balance them against the plaintiff's right to choose the forum, the plaintiff's substantial right to choose the forum. It's not a simple balance. The factors have to be looked at in their totality, not balanced against each other, and the factors in their totality must strongly favor the defendant's alternative forum. In Green, the Illinois Supreme Court said, quote, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. And that phrase was italicized in the opinion. So it is an unequal balancing test. So we focus on the private and public interest factors, first looking at the private interest factors. These are familiar factors. They're stated by number in every case. First one, inconvenience to the defendants. Sometimes they say inconvenience to the parties, but they don't really mean that, because the courts say that inconvenience to the plaintiff doesn't count. The plaintiff has chosen the forum. So it has to be inconvenience to the defendants. In these cases, Your Honors, there are from 40 to 70 defendants in each case. Some have headquarters in Illinois. Some are doing business in Illinois. Some are from other states. The records in these cases show that there is no one place that is a center of convenience for each group of defendants. But more important, it's common knowledge that in the 21st century, defendant corporations do not have to be physically present at the place of the forum to defend litigation. Every lawyer in this room who has represented defendants in litigation has done so for corporations located beyond the forum. We communicate with them by all modern means of communication, especially now the internet and electronic mail. Documents are now digital or digitized routinely. We communicate instantly via email. We research via the web. Medical records are almost uniformly digitized. The non-resident defendants have not shown how their physical location will make defending these cases in St. Clair County any more inconvenient than any of the other cases that are routinely defended in forums distant from their corporate headquarters or other corporate locations. Second, relative ease of access to sources of testimonial documentary or real evidence. As to documentary and real evidence, we have the same reality. Documentary evidence is routinely digitized. In fact, it appears from the scheduling order that much of the evidence in these cases has already been identified and has been exchanged or will be exchanged when the cases are remanded. In addition, the court says a third party is in the process of finalizing an electronic document service platform, which will allow plaintiffs and defendants to file documents electronically. This will reduce the expenditure on mailings and copies and eliminate any problem with transportation or location of these documents. None of this has been shown to be available or more readily available in any of the other forums suggested by the defendant. Real evidence, if there is any, can easily be transported as it is now by reliable delivery services, routinely done in other cases. As to testimonial evidence, we can eliminate plaintiff's families and their closely related witnesses because plaintiffs chose this forum, and so it's presumed to be convenient for them. Defendant argues that the critical kind of proof, in this case, is proof of exposure. Granted, that's plaintiff's evidence. Plaintiff has the burden of proof. Plaintiff is not complaining about presenting this proof it's safe for account. And we know, from experience with non-litigation, that this is not difficult to do. But wherever it is, wherever the case is, there are going to have to be some witnesses who are going to have to be brought to that location or are going to have to testify by evidence deposition. The other witness disclosures show that, in each case, both expert and fact witnesses are scattered throughout the United States and beyond. At the hearing of the trial court, plaintiffs used as demonstrative exhibits maps showing the location of the disclosed witnesses. We reproduced these maps in our briefs, and we've drawn upon them today a close-to-size reproduction of one of those maps. Your Honors, these maps are a complete argument all by themselves. These cases can be decided simply by looking at these maps. Defendants argue... And by the way, as we indicated, we have submitted an appendix in the appendix to our brief a chart in which we have documented, in the record, where each of these witnesses has been disclosed. Defendants argue that these are only potential witnesses, but that's true in every case, every forum nonconvenience case. These witness lists are all we have, and that's what we have to use in deciding a forum nonconvenience motion. As we said, any doubts about the record, the adequacy of the record, must be resolved against the defendants. They also argue that many of these witnesses are experts. However, the disclosures don't state that per se. That may be inferred in some cases. And they say that because experts, the location of experts, are entitled to relatively little weight, those don't count. And it is true that there are some cases that say that, but most cases tend to ignore that dictum, as they should. And by the way, that rule is usually applied to plaintiffs' experts, because defendants who are defending the case will have to secure experts and have them brought to that location. So their convenience should be important in these cases. But, Your Honor, witnesses are witnesses, and convenience of witnesses is a key part of the equation. In Langenhorst, the Illinois Supreme Court said that where witnesses are scattered, as they are in these cases, numerous venues are appropriate and none can be said to be more convenient. We have cited numerous other cases to that same effect. Quay, Doreen, Hinshaw, Berry, Byrd, Brown v. Cottrell, a decision of this court. In Ammerman v. Raymond Corporation, the appellate court said, when potential trial witnesses are scattered on various counties and various states, litigation in question has a connection to several forms, and a trial court does not abuse its discretion in denying the defendant's motion of transfer on the basis of a form of nonconvenience. Since the witnesses in these cases are widely distributed geographically, it's obvious that a large number of witnesses will either have to travel to some form to testify in person, or will have to testify by evidence deposition. Because they are dispersed, there is no one place which is more advantageous than any other from the standpoint of convenience to witnesses. St. Clair County, part of the St. Louis metropolitan area, is centrally located in the United States and convenient for a major international airport. It is certainly far more convenient for witnesses than the rural or semi-rural areas that are the plaintiff's home areas in these four cases. The third private interest factor is all other practical problems that make the trial of the case easy, expeditious, and inexpensive. This includes such things, they say, as the compulsory process for unwilling witnesses, the cost of attending by willing witnesses, the ability to view the premises, and, to a minor extent in some cases, say, the location of the parties' attorneys. As to witnesses, this factor completely overlaps factor number two. The map says it all. The potential witnesses here are scattered, and therefore there is no one form that stands out as more convenient. We must remember the defendants have to show that there is another form, a particular form, that is significantly, substantially more convenient to the witnesses as a whole. In these cases, they cannot and have not done so. To the extent it might be required, a compulsory process from any court you can name would not reach the vast majority of the disclosed witnesses to the extent, as I say, that it would be necessary, and there is no one court that has an advantage in this regard. This court said in the Byrd case, St. Louis's central location, an excellent airport, make it convenient for willing witnesses to come to this forum and for attorneys to travel for the purpose of depositions. Defendants have not shown that any other suggested form is substantially more convenient or less costly for this purpose. As to the view, this is a non-issue in this case. As defendants say, these are occurrences which took place over various locations many, many years ago where conditions have undoubtedly changed, and in a products liability case like this, it is not ordinarily necessary at all. Those are the private interest factors, so looking at those factors, they do not all favor a transfer. Let's look at the public interest factors. The defendant says we have no meaningful response to the public interest factors. We respectfully disagree. Let's look at those factors. The first is the interest in deciding localized controversies locally, localized controversy. This factor is of little value in this case because unlike many of the other forum nonconvenience cases and the cases that the defendants rely on, this is not a localized controversy. This court in the Hoskin case said that where an injury occurred at various locations over many years, quote, this is not the type of inherently local controversy that must be resolved locally. We've cited a number of cases all stating that there were cases about questions of product liability. The concern of having local interest resolved locally, quote, is of less significance because product liability cases have broader implications, end quote. While the forum where the injury occurred has an interest in the outcome of litigation, this does not, the cases say, necessarily apply to cases involving complex product liability issues. This court recognized this principle 16 years ago in the Heffner case where it said, quote, due to the nature of a specialist litigation, this case is not truly connected to any one county and has nationwide implications. Second, the unfairness of imposing the expense of a trial and the burden of jury duty on residents of the county with little connection to the litigation. Here, just as in the Heffner case, the trial court determined that the trial of this case would not duly burden the citizens of St. Clair County. Illinois residents have an interest in deciding a case involving the sale of effective products by companies doing business in Illinois, and we would have an interest in common to all citizens since the problem of asbestos contamination is a national problem, no less in St. Clair County than anywhere else. In addition, this court in Heffner said, a trial court can better assess a case's burden on its docket than a viewing court. Third part of the public interest factor is the administrative difficulties presented by adding further litigation to a congested court docket. Well, that's a non-issue here, Your Honor, because defendants below conceded that court congestion is not a factor. The Illinois Supreme Court of Langenhurst and Green said court congestion is a relatively insignificant factor, especially when the record does not show that another forum would resolve the case more quickly. Again, the trial court is in the best position to determine that burden. In Heffner, this court said that there is no abuse of discretion when a circuit court examines its own docket in assessing the court congestion factor. Defendants have failed to sustain their work to show that a trial in another venue would be more expeditious or that in St. Clair County, it would strain judicial resources. This court can take judicial notes that the St. Clair County Circuit Court has experienced in major litigation, well equipped to handle complex, multi-party product liability cases. The most recent relevant appellate court case is Berwyn v. Motorola, a 1st District 2011 case. In that case, several workers' children sued Motorola, alleging that their parents sustained, defenseless relative to their parents' exposure to certain hazardous products while working in Motorola's semiconductor manufacturing facilities in Texas and Arizona. The trial court denied Motorola's motion to dismiss based on forum inconvenience, and the appellate court affirmed. In Irwin, the plaintiff's injuries allegedly occurred as a result of toxic exposures at those work sites. The plaintiffs resided in those states. Their medical treatment occurred there. There was evidence that at least some part, perhaps a major part, of Motorola's alleged tortuous conduct occurred in Texas and Arizona, although plaintiffs claimed that some corporate decisions in this regard were made in Illinois. But clearly, the greater weight of the context was Texas and Arizona. Defendants argued that in Irwin, there were numerous ill-my-witnesses disclosed, but the fact remains that the tortuous conduct occurred in Texas and Arizona primarily. The persons exposed lived and died in Texas and Arizona, and the critical fact witnesses to the occurrences would be found in those states. And yet the court denied the forum, affirmed the denial of the forum inconvenience motion. Now, of course, in this case, we do have Illinois and St. Louis area witnesses as well. In each of these cases, I don't have time to really go through the charts at the back, but I did a quick review of some of those charts in the appendix to our brief, and we see that, for example, in Van Slyke, there were 17 designated witnesses in the St. Louis area of Missouri. There were 20 ill-my-witnesses in the Chicago area, five in downstate, three in Belleville, one in Godfrey, one in Maryville, one in O'Fallon, one in Highland, Illinois, and so forth. So if you go through those lists, you'll see that there are ill-my-witnesses here, but these cases should not turn on counting witnesses or counting ill-my-contacts. The issue is the convenience to potential witnesses as a group. The Irwin case is precedential here and shows that the cases cited by the defendants are not controlling. Heffner v. Hollins-Clarney is another landmark case that is highly persuasive here. I was privileged to represent the plaintiff in that case. Clarence Heffner was exposed to asbestos fibers during his long employment at Electrical Energy in Massachusetts County in far southernmost Illinois on the Ohio River. He filed suit in Madison County. Defendants' warrant on a convenience motion to transfer the case to Massachusetts County was denied, and this court affirmed. The record showed that plaintiff's back witnesses came from various counties and Kentucky, or the defendant had not included the addresses of certain witnesses. Most of OCF's back witnesses were located out-of-state, and expert witnesses came from several different Illinois counties. This court said, because of their locations, virtually all the defendant's witnesses will need to travel to court regardless of the chosen forum. And so this court concluded that venue was proper in Madison County. We have addressed the charge of forum shopping in our brief, and in the interest of time, I don't have time to really go into great detail here. But as we said there briefly, a plaintiff will and always does have various legitimate reasons for selecting a particular forum. These might include not only a forum where the plaintiff feels he or she might have a better opportunity to succeed, but also where his or her chosen attorney practices or where the court system is more experienced and better prepared for a major case involving multiple parties and complex fact issues. Defendants call this forum shopping. But it is the right of the parties and the duty of their attorneys within the limits of the law to select the available forum that is best suited to their case. We should abandon this pejorative term, forum shopping. The term forum shopping obscures the real task, which we have been told repeatedly, is to focus on the private and public interest factors. It's not a label that counts. It's the analysis of those factors. We've distinguished in our brief the cases relied on by the defendants, cases such as Bland and Dowdy and Lambertine. These are cases in which the facts were highly localized. Taking any of these cases, Bland, the plaintiff was injured while working on a specific train at a specific location at the A.E. Staley Plains in Decatur. In Dowdy, the plaintiff was injured when his tractor collided with a truck being driven by a Union Pacific employee in Macoupin County. In Lambertine, it was an FBLA case. The only defendant that was argued in the trial court or on appeal was the railroad, which was Lambertine's employer, and his exposure there occurred at a single work location with a single employer in the area of Sangamon, Michigan. Those are localized controversies. This is not. Those cases simply are inalienable here. Your Honors, I'm going to pass on the choice of law issue because I've addressed that in brief. Today, that may have been a fact of 60 years ago, but today, finding out what the law is, particularly where we have principles of court law that are common around the country, finding out what the law is is not a difficult task. Whatever the location, there can be choice of law issues in any case. That should not be of any real significance in a forum nonconvenience case. Forum nonconvenience is about convenience and not context. The doctrine goes back more than 60 years, when there was no fax, there was no internet, there were no PDF files, there was no e-mail, there were no personal computers, there was no ability to scan and digitize documents. Some of us were practicing law even back then, when you didn't even have a decent photocopy machine. There was no ability to communicate instantly to transmit documents over a long distance in a second or two. But defendants would have us use the same analysis as we did when convenience meant something very different. Modern society, especially modern communication and technology, are very different than they were when Gulf law, in most cases, were decided. And these changes greatly affected the relative convenience of forums. As the Illinois Supreme Court said in Greene, quote, We live in a smaller world than that contemplated by the Gulf oil port or even this port in Taurus. Today we are connected by interstate highways, bustling airways, telecommunications, and the world wide web. Today, convenience, the touchstone of forum nonconvenience doctrine, has a different meaning. That is, the convenience of the parties depends in large measure upon the context in which we evaluate their convenience. The doctrine of forum nonconvenience must be in tune with the 21st century. Defendants have not shown an abuse of discretion so egregious as to be irrational. In fact, we think we have shown that this is the only logical result based on these unique facts. The trial court's order must be affirmed. Thank you, Mr. Piano. Thank you, Your Honor. Mr. Stoltz, you may utilize the remainder of your time from your argument, plus your five minutes. Your Honor, I suggest that the modern approach as alluded to by Mr. Bianco is in fact what this court decided last October. And last October, in your Lavity decision, this court reaffirmed the doctrine of forum nonconvenience, recognized that choice of law is a significant factor, recognized that forum nonconvenience has been consistently disfavored most recently by the Illinois Supreme Court, well, not most recently, but beginning certainly with the Doughty decision. And in the Lavity decision, in addressing this question of appropriateness, which really becomes an issue of semantics, this is what this court said. Thus, in addressing the issue of interstate forum nonconvenience, we focus our inquiry on whether Illinois is the appropriate state to litigate the controversy. That, indeed, is the modern approach. And indeed, Your Honor, this statement then cracked right down the line with one Supreme Court case after another in evaluating the so-called appropriateness in terms of the public interest factors and the private interest factors. And indeed, Your Honor, in our briefs and in our motions that we filed at the trial court, we never abandoned the public interest or private interest burden that we bear. We met that burden. And with all due respect to Judge Young, he simply abused his discretion in not following the dictate of the Lavity decision. Now, the Lavity decision is only the most recent, Your Honor. The Langenhorst decision was talked about at length and cited for the proposition that it stands for that appropriateness is not the appropriate standard. But again, what you need to, and I'm sorry to ask the court to review Langenhorst in this level of detail, Langenhorst is repeatedly generalized. When the majority of Langenhorst said to talk about appropriateness, it says, quote, we recognize that the dissent would prefer to replace, quote, the convenience of the parties, close quote, as the touchstone of forum nonconvenience analysis and focusing on the, quote, more appropriate forum. This is the important part. Based on where the cause of action arose, the shift is clearly not warranted and would result in obliterating the fending system. We are not asking that this court evaluate these four cases in terms of a single factor of where the cause of action arose. We methodically went through private interest factors, public interest factors, each case. We delivered those. I set those out, those key facts, forward at the beginning with my argument. Your Honors are aware of what they are. The Illinois headquarters issue, Your Honor, has been dealt with. It was indicated that it should be a consideration. The Illinois headquarters issue was addressed squarely by the Illinois Supreme Court and readily. It said it should not be a factor in the analysis of forum nonconvenience. A little later in the decision, it said, well, it might be a factor but not a significant one. And indeed, Your Honors, this court, in the labyrinth, treated it as a factor but not a particularly significant factor. That's where we are. We're talking about, as Mr. Kiyonka said, a litigation that involves 40 to 70 different defendants. The deference issue, with all due respect, is actually more narrow than what Mr. Kiyonka related. The deference issue, meaning that the plaintiff gets to choose his forum, is if the deference is accorded if it's where the cause of action arose or where the plaintiff lived. The flip side, if the cause of action did not arise in Illinois and if the plaintiff does not live in Illinois, that's what triggers the less deference standard. And indeed, that is what we have in Berutha, Phillips, Rankin, and Van Slyke. Less deference. We met that hurdle. The issues of maps, Your Honor, and the location of expert witnesses, we cited the Halsey case, I believe, in our briefs. That stands for the proposition that the location of expert witnesses should be accorded little weight. Indeed, Your Honor, I think sometimes in the heat of argument, we overgeneralize, but the statement was made that defendants must show that another forum is significantly more convenient to the witnesses. That is not the statement. Significantly more convenient based on public interest factors and the private interest factors. The courts have repeatedly said you need to look at the totality of the circumstances. It's not simply related to the witnesses. And indeed, Your Honor, when you are talking about, as we are in four out of four cases, assertions of interstate forum nonconvenience and one in case intra, on the interstate aspects, the plaintiffs have no answer to the proposition that an Illinois subpoena cannot compel the appearance of an out-of-state witness. It can't be done. And these are the people who you need to disprove the plaintiff's allegations, establish the alternative causation, the very localized nature. Nor does that overgeneralization address the fact of the need to apply foreign law. And to suggest with all due respect that that's an arcane or out-of-date concept simply flies in the face of the gritty decision by the Illinois Supreme Court in 2005, I believe, the Sackowiak decision by the Illinois Supreme Court. It is, in fact, a significant fact and a fact of which the courts have recognized should not burden this court. As this court said in Larry, the courts are dealing with finite resources. Finite resources. Why should this court be burdened to handle a case that does not arise out of the state of Illinois, where the plaintiff does not live in Illinois, where the plaintiff's deceit does not live in Illinois, where none of the occurrence witnesses reside in the state of Illinois? And I would carve off the end slide, which we've addressed previously. That, indeed, Your Honor, is a burden. Your Honors, Flaherty answers many, many, many of these questions. The suggestion was made that Irwin somehow should be dispositive and decided it was being precedent. Indeed, Your Honor, Irwin was not precedent. It comes out of the first district. And regardless, the court looks at Irwin's decision and will see a multitude of connections to the state of Illinois. Teffner was an intrastate case. It was, in fact, I would argue, that if it were decided today, it might be decided differently in light of the Supreme Court's holdings of Dodd, Noreen, Ridley. But, indeed, Your Honor, what gives motion to us is this court's decision in Larry, where, as this court said, the defendant argues that the state of Illinois has no connection to this litigation and that the facts warrant dismissal of this case for refiling of the sheet. That applies with equal force to each of these four claims. We would ask that Judge Young's order be reversed. Thank you, Your Honor. Thank you, Mr. Schultz. Thank you, Mr. Kiyanka. Thank you, fellow counsel for all the various parties in this case. And that concludes argument. And we will take it under advisement.